SIMPSON v. DYER.

1. VENDOR AND PURCHASER — LAND CONTRACTS — EXECUTION — DE-
   LIVERY—CONSIDERATION—FRAUDS, STATUTE OF.
   
   Vendee under proposed executory land contract is not bound
   thereby where no part of the consideration is paid and the con-
   tract is neither signed by nor delivered to him (3 Comp. Laws
   1929, § 13413).

2. APPEAL AND ERROR—RECORD—IMPERFECTIONS AND IRREGULARITIES.
   Alleged imperfections and irregularities in record on appeal *held*,
   insufficient cause for dismissal of appeal.

Appeal from Wayne; Covert (Frank L.), J., pre-
siding. Submitted June 6, 1934. (Docket No. 35,
Calendar No. 37,808.) Decided September 18, 1934.
Rehearing denied October 23, 1934.

Bill by George T. Simpson and wife against John
A. Dyer and Thomas A. Griffin, individually and as
copartners doing business as Dyer-Griffin Realty
Company, and Dyer-Griffin Land Company, a Mich-
igan corporation, to enjoin forfeiture of a land con-
tract, commencement of a summary proceeding and
for a money decree. From decree for plaintiffs
against defendants Dyer and Griffin, they appeal.
Bill dismissed.

*George T. Simpson,* for plaintiffs.

*Frank C. Cook* and *John P. O'Hara (John F.
Wagner,* of counsel), for defendants.

NORTH, J. Plaintiffs were purchasing on contract
a parcel of land in the city of Detroit. Because of
their default in making instalment payments notice
of forfeiture was served by the vendor. Thereupon
plaintiffs filed the bill of complaint herein and

sought to have the vendor enjoined "from proceeding with the forfeiture of said land contract * * * and from commencing summary proceedings * * * and from taking proceedings at law for the collection of the unpaid balance claimed to be due" on the land contract. The theory upon which plaintiffs assert a right to the injunctive relief prayed is that there was due to plaintiffs on another land contract dated October 3, 1928, an amount of money in excess of the amount due from plaintiffs to their vendor and that therefore plaintiffs were not in default but instead should be given an affirmative decree for a balance due them from defendants Dyer and Griffin, either as individuals or as copartners doing business under the firm name of Dyer-Griffin Realty Company. In this connection plaintiffs claim that their vendor, the Dyer-Griffin Land Company, a Michigan corporation, was in legal effect the same entity as the Dyer-Griffin Realty Company copartnership, the vendee in the alleged contract of October 3, 1928. The trial court sustained plaintiffs' contention and gave them a decree for $1,675.88 against defendants Dyer and Griffin individually and as copartners. The defendants just above named have appealed.

One of the grounds of appeal asserted is that the alleged contract of October 3, 1928, was not consummated in that it was not signed either by or in behalf of appellants or any of them and that it was never delivered to or accepted by appellants or any of them, and therefore never became a fully consummated and binding contract. If appellants are right in their contention, it will necessitate a reversal of the decision of the circuit judge and dismissal of plaintiffs' bill of complaint.

Briefly the pertinent facts are as follows: Plaintiffs had a prospective purchaser for the property

which they were buying on contract. Approximately $700 was then unpaid on plaintiffs' contract. Mrs. Simpson went to the vendor, the Dyer-Griffin Land Company, to secure an abstract of the title down to date. While there she was informed that Mr. Dyer desired to purchase the property. Mrs. Simpson informed her husband who by telephone on that same day advised Mr. Dyer of the acceptance of his proposed terms of purchase. Thereupon Mr. Dyer, pursuant to his arrangement with Mr. Simpson, prepared in duplicate a land contract in which plaintiffs were named as vendors and Dyer-Griffin Realty Company, a copartnership, vendee. The contract provided a purchase price of $2,100, down payment of $300 and payment of balance due plaintiffs within 90 days from date. Mr. Dyer delivered these duplicate contracts to Mrs. Simpson at her home. They were left there with the understanding that she and her husband, who was not present at the time, would execute the contracts and that Mr. Dyer would call the following day, make the down payment of $300, and receive a copy of the contract. Plaintiffs signed these contracts in the evening of the same day that they were delivered to Mrs. Simpson. Mr. Dyer did not return as arranged. The next day Mr. Simpson telephoned Mr. Dyer and their conversation was to the effect that the transaction would be consummated. Notwithstanding these negotiations and the steps taken looking towards completion of the contract, the undisputed testimony is that the contract never was signed by the vendee or by anyone in its behalf, the down payment was not made, nor was there any delivery of the contract to the vendee or to anyone in its behalf. Instead both duplicates remained in the possession of the plaintiffs.

The factual aspect of this case is stated in appellees' brief as follows:

"Mr. Dyer did not return to keep his arrangement. Plaintiffs did not make any tender of the contracts to Mr. Dyer, other than the telephone conversation telling him that they had been signed and were ready for him; the contracts being retained in the possession of plaintiffs all of the time waiting for defendant Dyer to call. The contracts which Mr. Dyer prepared provided that his copartnership, the Dyer-Griffin Realty Company, was to have paid all balance by January 1, 1929, when plaintiffs, whose title was evidenced by land contract, were to have given a deed to the Dyer-Griffin Realty Company with a covenant by grantee to assume the first land contract and pay the same; but the Dyer-Griffin Realty Company did not make any of the payments on either of the contracts."

Appellees contend that the contract in which they were vendors was "completely valid" notwithstanding it was neither signed by nor delivered to the vendees therein named. Appellees cite and rely upon numerous cases quoted or referred to in *Pangburn* v. *Sifford,* 216 Mich. 153, and apparently in particular upon the *Pangburn Case.* This latter case does not sustain appellees' position but instead holds that a vendor who receives and receipts for part of the purchase price and signs and delivers a memorandum of sale of land sufficient to comply with the statute (3 Comp. Laws 1929, § 13413) is bound thereby. No case is cited by appellees, and we apprehend none can be found, holding, as appellees contend herein, that a vendee in a proposed executory land contract is bound thereby notwithstanding no part of the consideration is paid and the contract or memorandum is not signed by or delivered to the

vendee. There is quite a full review of Michigan decisions in *Pangburn* v. *Sifford, supra,* and it seems unnecessary to restate the authorities herein. Under the circumstances disclosed by this record it conclusively appears that the contemplated execution of this land contract was never consummated nor did a written memorandum pass between the parties which was sufficient to make the contemplated agreement binding upon defendants. It follows that plaintiffs' bill of complaint must be dismissed and the relief therein sought denied.

Prior to the hearing on the merits, appellees made a motion to dismiss this appeal. The motion was based upon several alleged imperfections and irregularities in the record on appeal to this court. We have given this motion due consideration but do not find sufficient cause for dismissal. The motion is therefore denied. Decree will be entered in this court in accordance herewith. Appellants will have costs of both courts.

Nelson Sharpe, C. J., and Potter, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.